IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL MORRIS,<br>No. R04259,<br><br>    Plaintiff,<br><br>vs.<br><br>ANGEL RECTOR,<br>N. YOUSUF,<br>DR. VIPIN SHAH,<br>C/O HUBLER,<br>JANE DOE, and<br>DONALD GAETZ,<br><br>    Defendants. | Case No. 13-cv-01139-MJR |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Daniel Morris, an inmate in Pickneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on the medical care he received when he broke his elbow August 22, 2012.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

According to the complaint, on August 22, 2012, Plaintiff fell while playing basketball. The next day he became concerned about continued pain and swelling, so he reported to C/O Hubler that he thought he had broken his elbow and needed medical attention. Hubler indicated he would alert the health care unit as soon as he got time. Plaintiff went on to eat his lunch. Hubler approached Plaintiff approximately one hour after Plaintiff's first request for medical attention; he inquired whether Plaintiff and his cellmate had been fighting. After Plaintiff assured him there had not been a fight, Hubler called the health care unit. He then told

Plaintiff that there was no guarantee Plaintiff would be seen because it was not an "emergency." Hubler checked back about 30 minutes later and told Plaintiff that he would be seen on health care rounds. No one ever showed up. Plaintiff approached C/O Hubler again on September 2 regarding the injury. Hubler again contacted the health care unit. All the while, Plaintiff had to endure pain. Hubler explained to Plaintiff that only "life and death" situations could be deemed emergencies warranting being taken immediately to the health care unit, rather than waiting for the health care rounds.

On September 4, 2012, Plaintiff was finally called in to see a Nurse Jane Doe. After examining Plaintiff's elbow and having Plaintiff perform various range of motion maneuvers, the nurse declared that nothing appeared to be broken. Plaintiff disagreed with that assessment. Nurse Jane Doe appeared to become impatient. Plaintiff's requests for an ice pack and "wrapper" were denied, but the nurse did prescribe Advil and instructed Plaintiff to perform certain hand maneuvers.

On September 6, 2012, Plaintiff was seen by Nurse Practitioner Angel Rector. Rector denied Plaintiff's requests for an ice pack, a "wrapper" and stronger pain medication. However, Rector did order an x-ray. Dr. N. Yousuf read three x-ray views of Plaintiff's elbow and reported, "There is no convincing evidence of an acute bony fracture," but follow-up x-rays were suggested (Doc. 1, p. 30). Nurse Practitioner Rector relayed this report to Plaintiff. Plaintiff remained in pain and requested Ibuprofen, but Rector only prescribed less effective Motrin. Plaintiff has knowledge that Rector had previously treated an inmate with a broken elbow, and that inmate was sent to an outside orthopedist, so, from Plaintiff's perspective, Rector should not have misdiagnosed Plaintiff's broken elbow and should have taken a more proactive approach.

Plaintiff's elbow was x-rayed again on September 26, 2012—just over a month after his injury. Dr. Yousuf compared the original x-rays with the new and found that a sub-acute, somewhat comminuted fracture of the radius had become apparent (Doc. 1, p. 32). Medical Director Dr. Shah relayed the diagnosis to Plaintiff on September 28, 2012.

On October 3, 2012, Nurse Practitioner Rector informed Plaintiff that he had been approved to see an outside orthopedist. Plaintiff actually had to wait an additional 16 days to go see the orthopedist—a delay he attributes to Dr. Shah, who did not deem the injury an emergency matter.

The orthopedist opined on October 23—two months after Plaintiff was injured—that the fracture was "well healed" and there was nothing he could do (Doc. 1, p. 38). Plaintiff was found to have "excellent range of motion," although he lacked about five degrees of extension and pronation (Doc. 1, p. 38). Plaintiff's pain was characterized as "getting better," and Plaintiff was permitted to resume activity as tolerated (Doc. 1, p. 38).

The complaint further claims that Warden Gaetz failed to protect Plaintiff after his serious need was brought to the warden's attention—presumably via Plaintiff's October 19, 2012, emergency grievance, which the warden designated as an "emergency" warranting expedited review (Doc. 1, pp. 24-25).

Plaintiff alleges that Defendants C/O Hubler, Nurse Jane Doe, Nurse Practitioner Rector, Dr. Yousuf, Dr. Shah and Warden Gaetz were each deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.

## Discussion

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. *See also Berry v. Peterman*, 604 F.3d 435, 439

(7th Cir. 2010). Prison officials can also violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Greeno*, 414 F.3d at 653, citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). A serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). To satisfy the subjective component, a prisoner must demonstrate that the prison official "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653. "Deliberate indifference cannot rest on negligent actions or inactions, but must instead rest on reckless indifference to the plight of an inmate." *Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003). In *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996), the Court of Appeals for the Seventh Circuit, observed that the subjective test "implies that there will be cases in which treatment falls below acceptable standards that do not state a claim for constitutional purposes."

In some situations, the symptoms of a broken bone can plainly call for a particular medical treatment. *See Steele*, 82 F.3d at 179 ("a leg is broken, so it must be set' the person is

not breathing, so CPR must be administered"). In any event, for purposes of this preliminary review, the Court will generally assume that a broken elbow and the associated pain constitute a serious medical need and focus on whether the complaint states a claim relative to each Defendant's purported deliberate indifference.

**C/O Hubler**

Plaintiff approached C/O Hubler the day after the injury occurred. It was not until after Plaintiff went through the lunch line that he told Hubler how his elbow was painful, making it difficult for Plaintiff to carry his lunch tray. After about 30 minutes, Hubler returned to question Plaintiff to ensure he had not been fighting, and then Hubler notified the health care unit and later checked back with Plaintiff. Plaintiff's symptoms did not clearly suggest that this was an emergency situation and Hubler acted accordingly. When Plaintiff approached Hubler a few days later, Hubler again made an effort to secure medical treatment for Plaintiff, although Hubler told Plaintiff since it was not a life or death situation he would not call in an emergency. Even assuming the allegations are true, there is no reasonable basis for inferring deliberate indifference. Plaintiff's claim against C/O Hubler amounts to no more than negligence, so this claim will be dismissed. *See Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003).

**Nurse Jane Doe**

Nurse Jane Doe examined Plaintiff and, based on her observations and Plaintiff's range of motion, concluded that Plaintiff did not have a broken bone. Although Nurse Doe may have become impatient with Plaintiff and refused to give him an ice pack and "wrapper," she did prescribe Advil. Plaintiff's claim against Nurse Jane Doe amounts to a difference of opinion regarding the proper diagnosis and course of treatment—which is not actionable under the Eighth Amendment. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (a difference in

opinion about the proper course of medical care does not support a claim of cruel and unusual punishment). At worst, Nurse Doe was negligent and committed malpractice, but the allegations regarding Nurse Doe do not suggest deliberate indifference. *See Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003). The Eighth Amendment claim against Nurse Doe will be dismissed.

**Nurse Practitioner Rector**

Nurse Rector also did not perceive that Plaintiff's elbow was broken, but she did order x-rays. The fact that Rector may have taken a different course of treatment when a different inmate presented with a broken elbow does not, by itself, suggest deliberate indifference. Even when the first x-rays did not conclusively show a broken bone, Rector did prescribe slightly stronger medication. Again, the complaint describes a difference of opinion regarding treatment, but does not reasonably suggest deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003). Consequently, the claim against Nurse Practitioner Rector will be dismissed.

**Dr. N. Yousuf**

Dr. Yousuf read Plaintiff's x-rays and did not see convincing evidence of a fracture; nevertheless, he suggested follow-up x-rays. Even if Dr. Yousuf misread the first images, that would only be negligence or malpractice, not rising to the level of deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ); *Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003). Plaintiff's Eighth Amendment claim must, therefore, be dismissed.

**Dr. Shah**

Medical Director Shah informed Plaintiff that his elbow was, in fact, fractured. According to documentation attached to the complaint, it was Dr. Shah who ordered the outside

orthopedic consultation (Doc. 1, p. 37)—hardly a suggestion of deliberate indifference. The fact that it took 16 days for the exam to occur is not obviously attributable to Dr. Shah. Insofar as Plaintiff would have had his situation deemed an emergency, this amounts to a difference of medical opinion, not actionable under the Eighth Amendment. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003). For these reasons, the claim against Dr. Shah will be dismissed.

**Warden Gaetz**

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Accordingly, there is no *respondeat superior* liability under Section 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). More to the point, a warden cannot be held liable for the constitutional violations of his subordinates merely because he is the chief administrative officer of the prison; he must have personally participated in or approved of the violations. *See Johnson v. Snyder*, 444 F.3d 579, 583–84 (7th Cir. 2006).

Warden Gaetz *did* accept Plaintiff's emergency grievance and directed that it be handled immediately—hardly suggestive of deliberate indifference. Prison directors and wardens may relegate to prison medical staff the provision of adequate medical care. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). There is no suggestion that Gaetz did anything to delay treatment; he just did not interject himself into Plaintiff's care to overrule the medical staff's conclusion that Plaintiff did not present an emergency situation. Thus, in accord with *Burks*, the claim against Warden Gaetz will be dismissed.

**Disposition**

For the reasons stated, even though there was a long delay in diagnosing the elbow fracture, that delay is not attributable to the deliberate indifference of any of the Defendants. **IT IS HEREBY ORDERED** that all claims against all Defendants are **DISMISSED** with prejudice. Judgment shall enter accordingly and this case shall be closed. This dismissal shall count as one of Plaintiff's allotted "strikes" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that Plaintiff's motions for service of process at government expense (Doc. 3) and motion for injunctive relief (Doc. 4) are all **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**DATED:  December 3, 2013**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**